MARY A. CARTER, by next friend, v. DALE, ROSS & Co. et als.

TENANT BY CURTESY. *Separate Estate.* The husband is entitled to be tenant by curtesy in his wife's separate real estate, notwithstanding he was cut off from any participation in the rents and profits during coverture, if there be no words in the instrument creating the separate estate clearly indicating a purpose to cut him off from the curtesy.

FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. FLEMING, Ch.

T. M. JONES for complainants.

W. H. McCALLUM, J. S. WILKES and H. H. HARRISON for defendants.

McFARLAND, J., delivered the opinion of the court.

The only question in this case is, whether Milton A. Carter has a life estate in the land in controversy as tenant by the curtesy. Thomas E. Abernathy conveyed the land to his daughter, the operative words of the deed being to " Mary P. Barber, her heirs and assigns forever." * * * " To have and to hold the same to the said Mary P. Barber, her heirs and assigns forever, and to be her sole and separate estate, and to be free from the control and liabilities of any

husband she may hereafter have, with full power to dispose of the same at all times as she deem proper."

Said Mary P. Barber afterwards married Milton A. Carter, by whom she had issue born alive, and died without exercising her power of disposition. The creditors of the husband were proceeding to subject his life estate to the payment of their debts, when this bill was filed by the heir asking for an injunction.

It is assumed in argument, that the husband cannot be tenant by the curtesy of the separate real estate of his wife. It is true, Judge Sneed says, in delivering the opinion of this court in the case of *Bottoms* v. *Corley*, 5 Heis., 6, that this is the settled doctrine of the law. The point, however, did not arise in that case, the only question there being, whether the creditors of the husband could reach the issues and profits of the wife's separate real estate, the husband and wife being then both alive. Judge Sneed refers to several cases in support of his position, particularly *Hearle* v. *Greenbank*, 3 Atkyns, and other English cases. His attention seems not to have been called to our own case of *Baker* v. *Heiskell*, 1 Col., 642. In that case, by a decree of the Chancery Court, the title of the land was vested in a "trustee, his heirs and assigns," in trust for the sole and separate use and benefit of Eliza Heiskell, her heirs, executors and assigns. The trustee was "to receive for her use and the use of her heirs, etc., all the rents and profits of said land and to pay the same to her and her heirs." She was empowered to declare the uses and trusts for which said trustee shall hold said land by

deed or will, but she died without exercising this power. She having had issue born alive, by her husband, Judge Caruthers, delivering the opinion of the court, said: "We think the authorities are clear, that her surviving husband became tenant by the curtesy of said estate. This, he says, "has always been the law in England and in this country, although the wife was not entitled to dower in the equitable estates of her husband, until the law was changed by the act of 1823, then very properly establishing equality of rights." He adds, that the husband's right to curtesy can only be excluded when the intention is clearly expressed. He refers to 4th Kent's Com. The argument of the opinion in *Bottoms* v. *Corley* is, that in case of a separate trust there is not sufficient *seizin* to give the husband curtesy; the wife having the rents and profits of her separate estate, her *seizin* does not enure to the benefit of her husband. See 1 Washburne, 151, referring to the cases of *Hearle* v. *Greenbank*, 3 Atkyns, and *Sweetable* v. *Bowden*, 2 Vern.

Chancellor Kent says: "Though the husband be entitled to his curtesy in a trust estate, it has been a questionable point whether it must not be such a trust estate as to give him an equitable *seizin*. The opinions of Lord Hardwick in *Hearle* v. *Greenbank*, and *Roberts* v. *Dixwell*, are conflicting and cannot be reconciled; and it would seem to have followed that if the equitable freehold was out in trustees for the separate use of the wife and kept distinct during the coverture from her equitable remainder in fee, that she wanted that *seizin* of the entire equitable estate requi-

site to a tenancy by the curtesy." "But," he adds, "it is now settled otherwise, and the husband is tenant by the curtesy if the wife has an equitable estate of inheritance, notwithstanding the rents and profits are to be paid to her separate use during the coverture. The receipts of the rents and profits are a sufficient *seizin* of the wife." See 4 Kent, 31, referring to 3 Bro. Ch., 50; *Morgan* v. *Morgan,* 5 Mad. Rep., 248.

This is the authority followed by this court in the case of *Baker* v. *Heiskell.* More recently the question again came up directly in the case of *Frazer* v. *Hightower,* reported in 1 Tenn. Leg. Rep., 190, and the case of *Baker* v. *Heiskell* was followed, and Burton, Special Judge, says it is the settled law in Tennessee. See, also, 1 W. on R. P., 151–2.

In the case last referred to, the language of the deed was very similar in its operative words to the present, except that in that case, as in the Baker and Heiskell case, there was a trustee, while in the present case the conveyance is direct, and tenancy by the curtesy attaches more certainly to the legal than to the equitable estate; but we do not attach any importance to this difference.

The counsel for the complainant has relied in argument upon the cases of *Hamrico* v. *Laird,* 10 Yer., 221; *Loftus* v. *Penn,* 1 Swan, 448; *Ware* v. *Sharp,* 1 Swan, 489, and *Gardenhire* v. *Hinds,* 1 Head, 405. These were all cases of trust estate in slaves and other personal property, and do not raise the direct question. It is true that they involve to some extent the same principle. These all concede that to exclude the right

of the husband to take the personal property as administrator, the purpose to exclude him, not only during coverture but after the death of the wife, must be clearly expressed, otherwise he will not be excluded, and in these cases language was used in the instrument of settlement which the court held was sufficient to express the purpose, and we may add, that there was not much doubt of this in any of the cases, unless it be the one last cited.

Under these authorities we hold that all the requisites concurring, the husband may be tenant by the curtesy of his wife's separate real estate, notwithstanding he is cut off from any participation in the rents and profits during coverture. But if the purpose to cut him off from the curtesy be clearly expressed in the instrument of settlement, then this right is gone, although formerly this could not be done at law. See 4 Kent, 31–32; 1 Washburne, 151–152.

The only remaining question then is, whether such purpose is expressed in this case. Words which merely create a separate estate in the wife during coverture, will not be sufficient for the purpose; so words which merely deprive the husband of any right to control the estate during coverture or to make it liable for his debts, will not have this effect. For to secure the estate to the sole use of the wife has the effect to deprive the husband of such rights, and the addition of these words in express terms denying to the husband any control, or providing that his creditors shall not reach the estate, though often used as a matter of precaution, in this respect add nothing to the force

of the general words securing the estate to her sole and separate use. The intent to cut off the husband's right to the curtesy must, in some form, be expressed. In respect to the language of this deed, it is sufficient to say, that it is not stronger against the husband's rights than in the cases of *Baker* v. *Heiskell,* 1 Col., 642, and *Frazer* v. *Hightower,* 1 Tenn. Leg. Rep., 190, in both of which cases it was held that the husband's right to curtesy was not cut off. The language simply denies his rights during coverture.

The result is, the decree of the Chancellor must be reversed and the bill dismissed.